UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:05cv-105-R

PATRICIA GREENUP                                                                                      PLAINTIFF

v.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY                                                                              DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's brief in regards to her Employee Retirement Income Security Act ("ERISA") claim (Docket #19). The Defendant has responded to the Plaintiff's claim (Docket #22). The Plaintiff has replied to the Defendant's response (Docket #23), and the Defendant has filed a sur-reply to the Plaintiff's reply (Docket #28). Without objection all claims against Wal-mart Stores have been dismissed by previous order (Docket #26). The Court was informed there was no objection to that motion in that the parties agreed that Hartford Life and Accident Insurance Company was the administrator of the policy in question. Also, the parties agreed that there was no evidence that Wal-Mart had control of the administration of the policy. This matter is now ripe for adjudication. For the following reasons, the Plaintiff's claim is **DENIED**.

## BACKGROUND

Plaintiff Patricia Greenup ("Greenup") worked for Wal-Mart Stores, Inc. ("Wal-Mart") as a donut associate prior to becoming disabled on January 22, 2003; the date that she last worked due to carpal tunnel syndrome. At the time she stopped working for Wal-Mart, she was

awarded disability benefits from Wal-Mart's long term disability plan through Defendant Hartford Life & Accident Insurance Company ("Hartford"). Hartford is listed as the claim administrator on the insurance policy ("The Policy"). The Policy states that a participating employee is eligible for long-term disability benefits if he/she meets the definition of "disability." Greenup was classified as receiving benefits for "total disability" under the terms of the Policy. "Total Disability" is divided into two categories: "own occupation" and "any occupation." "Own Occupation" requires that the employee cannot perform one or more of his/her essential duties for a period of twelve months in order to receive benefits under the terms of the Policy. "Any Occupation" requires that after satisfying the "own occupation" total disability the employee is incapable of performing the "essential duties of any occupation for which you are qualified by education, training, or experience." Hartford initially determined that Greenup met the definition of "own occupation disability," and after the six (6) month elimination period, paid Greenup the full twelve (12) months of long-term disability benefits available. Greenup's "own occupation" benefits ended on August 7, 2004; Hartford decided to terminate Greenup's benefits at that point.

Roger K. McNeeley ("McNeeley") was the vocational analyst who worked for Hartford and handled Greenup's case. When analyzing Greenup's claim, McNeeley looked at: the reports and letters of Greenup's treating physician, Dr. Robert Meriwether, M.D. ("Dr. Meriwether"); medical records from Purchase Area Therapy; information provided by Greenup in her Long Term Disability Questionnaire; work and education history; and an individual analysis conducted by McNeeley. In looking at the information provided, Hartford determined that based upon Greenup's improved health since she stopped working on January 22, 2003, Hartford

denied "any occupation" disability benefits to Greenup asserting that she was not "totally disabled" from performing the essential duties of any occupation.  Hartford determined that despite her medical condition Greenup still had the skills to perform six (6) occupations at Wal-Mart, all of which are considered "sedentary to light" work and exceed the required earning potential of the Policy.

Hartford informed Greenup of its decision on July 23, 2004, two-days after Greenup received an award of Disability Insurance Benefits from an Administrative Law Judge ("ALJ") from the Social Security Administration ("SSA") on July 21, 2003.  The SSA had previously denied total disability benefits two (2) times in October and November 2003, before it awarded Greenup disability benefits.  Greenup appealed the decision by Hartford and referenced the decision by the ALJ.  In response to Greenup's appeal, Hartford issued a final denial of benefits to  the Plaintiff on August 30, 2004, in which it took into account the decision by the SSA.  Subsequent to that decision, Greenup filed her claim in this Court.

## STANDARD

In *Wilkins v. Baptist Healthcare Systems, Inc.*, the Sixth Circuit held that § 502(a) actions were not subject to Federal Rule of Civil Procedure 56 motions.  150 F.3d 609, 617 (6th Cir. 1998).  Instead, this Court must conduct a *de novo* review based on the administrative record; it must render findings of fact and conclusions of law, *id.* at 619, unless the benefit plan gives the administrator discretion to determine eligibility or construe the plan's terms, in which case an arbitrary and capricious standard applies.  *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Here, the parties dispute whether the Policy grants Hartford such discretion in this matter.

The Policy explicitly states that "The Hartford has full discretion and authority to determine eligibility of benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." The Sixth Circuit Court of Appeals, in *Garst v. Wal-Mart*, found that under a similar policy issued by Hartford to Wal-Mart, an arbitrary and capricious standard applied. *Garst v. Wal-Mart*, 30 Fed.Appx. 585, 588 (6th Cir. 2002). This holding, along with the plain and unambiguous language of the Policy, and the previous order by the Court (Docket #26) requires that the arbitrary and capricious standard be applied in the instant matter.

When applying an arbitrary and capricious standard of review, this Court must determine whether "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Bartling v. Fruehauf Corp.*, 29 F.3d 1062,1071 (6th Cir. 1994) (citing *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). If such an explanation is available, this Court must respect the decision of the claims administrator and uphold it. *Id.* In evaluating those decisions, this Court must consider only the evidence before the administrator at the time, *Daniel v. Eaton Corp.*, 839 F.2d 263, 266-67 (6th Cir. 1988), and must account for potential conflicts of interest. *Kulkarni v. Metropolitan Life Ins. Co.*, 187 F. Supp.2d 724, 727 (W.D. Ky. 2001) (citing *Firestone Tire and Rubber Co., v. Bruch*, 489 U.S. 101, 115 (1989); *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir.1998)).

## DISCUSSION

The Plaintiff challenges the denial of her "any occupation" disability benefits based on two arguments. First, that Hartford's analysis in denying the long term benefits was arbitrary and capricious because their review of the documents was flawed and Hartford did not properly take into consideration the decision by the SSA. And, second, that Hartford's denial was a

4

breach of their fiduciary duty to the Plaintiff and an abuse of discretion.  The Court will address each argument individually.

### 1. Whether the analysis by Hartford was Arbitrary and Capricious

The Plaintiff asserts that the Defendant acted arbitrary and capricious in denying Greenup her "any occupation" benefits because the reports that Hartford used to make its determinations were the same documents that the ALJ used to grant Greenup's claim.  In particular, Greenup claims Hartford misinterpreted the medical report by Dr. Meriwether.  Further, the Plaintiff contends that the Defendant did not look at the testimony offered by Dr. Lowell Lato, Ph.D. ("Dr. Latto"), a vocational expert who testified at the Plaintiff's SSA hearing that the Plaintiff could not conduct certain jobs that required overhead reaching or repetitive use of her hands.

Hartford responds to the Plaintiff arguing that the medical evaluation conducted by Dr. Meriwether as well as the information provided by Greenup in her Long Term Disability Questionnaire demonstrated an improvement of her health since she stopped working.  Specifically, Hartford cites Dr. Meriwether's report that stated Greenup was capable of:

> sedentary to light work activities [that did] not involve repetitive activities of her left arm or activities of overhead, over shoulder reaching and do not feel she would be able to return to work activities as she has described them in at Wal-Mart.

From this medical report and the other documents submitted to Hartford, the Defendant determined that Greenup, despite her condition, could still perform six (6) occupations at Wal-Mart that fell into the sedentary to light work category.  Hartford also contends that the conclusions reached by Dr. Latto at the SSA hearing do not contradict the vocational analysis conducted by McNeeley because like Dr. Lotto, Hartford states that it also relied upon the findings of Dr. Meriwether, who was Greenup's treating physician in this matter, in making its

decision. The Court agrees with Hartford, that based on the information provided Hartford made a reasonable determination.

>The Sixth Circuit Court of Appeals, in *Evans v. Unumprovident Corp.*, held that:
>
>when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision.

*Evans v. Unumprovident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006) (citing *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003). Here, both parties have relied upon the opinion of Dr. Meriwether, with each interpreting his findings towards their respected positions. In *McDonald*, the Sixth Circuit Court of Appeals stated that a plan administrator may not terminate benefits without specifying what kind of work a claimant could perform. *McDonald* at 172. In *Brooking v. Hartford Life and Acc. Ins. Co.*, the Sixth Circuit Court of Appeals also noted that a plan administrator not only must specify what kind of work a claimant could perform, but must also "make some inquiry into whether the jobs selected are ones that the claimant can reasonably perform in light of specific disabilities." *Brooking v. Hartford Life and Acc. Ins. Co.*, 2006 WL 357881, *4 (6th Cir. 2006).

In the instant matter, Hartford's vocational analyst identified six (6) specific jobs that he believed the Plaintiff could perform within the parameters of her condition based on the report filed by Dr. Meriwether that stated she could perform "sedentary to light work" that did not involve repeated use of her left arm or reaching overhead. These positions include: furniture rental consultant; tanning salon attendant; counter clerk; photo-finisher; usher; and surveillance-system monitor. This specific analysis conducted by the Defendant was not arbitrary and

capricious based upon the standard established in *McDonald* and *Brooking*. Nothing in Dr. Meriwether's report indicated that the Plaintiff could not work the six (6) aforementioned jobs or that Greenup could not work at all. Hartford stated the position it felt the Plaintiff could perform based on her specific conditions as determined by Dr. Meriwether. Accordingly, the Defendant was not arbitrary and capricious when it made its decision to deny Greenup long term disability benefits.

Additionally, Hartford correctly notes that an ERISA plan administrator is not bound to follow the determination made by the SSA in regards to disability benefits. *Whitaker v. Hartford Life and Accident Ins. Co.,* 404 F.3d 947, 949 (6th Cir. 2005); *See also Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003). As such, Hartford may, and in fact did consider the findings of the SSA, but that does not require an ERISA plan administrator to abide by the decision of the ALJ. *Id.* Further, Hartford also points out that in the ruling by the ALJ, the Court in that matter did not take into consideration in its opinion the medical evaluation of Dr. Meriwether that took place on May 25, 2004, in which Dr. Meriwether stated that Greenup was capable of light to sedentary work. Without those medical findings, which Hartford used in making its determination, the possibility that the ALJ and Hartford could reach different determinations on the long term disability benefits of Greenup is understandable. Therefore, the analysis conducted by Hartford was not arbitrary and capricious.

**2. Whether the denial of benefits was a Breach of Fiduciary Duty and Abuse of Discretion**

Greenup contends that because Hartford both funds the disability plan and directly administers it, it benefits directly from the denial of benefits, and therefore breached its fiduciary duty to Greenup and abused its discretionary authority in this matter. The Plaintiff argues that

by encouraging Greenup to draw disability from the SSA, Hartford then offsets that amount a claimant can receive under the Policy. Here, Greenup alleges that by acting in this manner Hartford was able to offset $7,405.37 from the backpay of the SSA award to Greenup from payments she already received.

Hartford asserts that the fact an award of SSA benefits is offset against any disability benefits payable under the Policy is not evidence of a breach of fiduciary duty and/or abuse of discretion on the part of the Defendant. Hartford again cites *Whitaker*, which not only addresses a similar issue, but also challenges *Darland v. Fortis*, the case cited by Greenup in support of her position. *Whitaker* at 949. In *Whitaker*, the Court stated:

> Whitaker contends that *Darland v. Fortis Benefits Ins. Co.*, 317 F.3d 516 (6th Cir.2003) compels the plan administrator to explicitly distinguish a favorable SSA determination when denying plan disability benefits. In *Darland*, this court recognized a unique situation where it would be inconsistent for a plan administrator to ignore the SSA's favorable determination, after the administrator had expressly requested the claimant to apply for SSA benefits. Nothing similar occurred in this case. Moreover, *Darland* predates [*Black & Decker Disability Plan v.*] *Nord*, and was clearly based on application of the treating physician rule.

*Id.* As such, an administrator is not bound by a SSA determination if it encourages the claimant to apply for Social Security benefits and then offsets the disability awarded based upon those benefits from the SSA, so long as the administrator takes the decision by the SSA into account when making its determination.

In the instant matter, Hartford took into consideration the decision by the SSA. Hartford determined that the SSA had not taken into account the May 25, 2004 medical report of Dr. Meriwether, which stated that Greenup could perform certain light and sedentary functions so long as these positions did not require her to excessively use her left arm or reach over her head. As determined *supra*, Hartford did not act arbitrary and capricious when it denied benefits under

the "any occupation" clause to the Plaintiff. Accordingly, Hartford did not breach a fiduciary duty to the Plaintiff, and did not abuse its discretion when making its determination to deny "any occupation" benefits to Greenup.

## CONCLUSION

For the foregoing reasons, the claim submitted by the Plaintiff requesting relief is **DENIED**.

An appropriate order shall issue.